FUNK v. HOUSE et al.    (No. 7956.)

(Court of Civil Appeals of Texas. Ft. Worth. April 25, 1914. Rehearing Denied May 23, 1914.)

1. APPEAL AND ERROR (§ 882*)—RULINGS ON EVIDENCE—RIGHT TO ALLEGE ERROR.

Defendant was not entitled to assign error on appeal on the admission of evidence substantially the same as other evidence given by defendant himself without objection.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3591–3610; Dec. Dig. § 882.*]

2. APPEAL AND ERROR (§ 1053*)—REVIEW—RULINGS ON EVIDENCE—PREJUDICE.

Where, in a garnishment proceeding against the owner of a building to recover on a debt for work and materials furnished the contractor, the court charged that the fact that plaintiff did work on defendant's building, which was satisfactory to him and was received and enjoyed by him, would not authorize a verdict against

him for the value of the work, but the jury must find that defendant owed the contractor a balance under the contract, defendant was not prejudiced by the admission of evidence that plaintiff furnished the contractor material and labor to complete the house with defendant's knowledge, and that such work and material was accepted by and satisfactory to defendant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4178–4184; Dec. Dig. § 1053.*]

3. TRIAL (§ 194*)—INSTRUCTIONS—CONSTRUCTION—WEIGHT OF EVIDENCE.

Where, in garnishment proceedings against the owner of a building for work and materials furnished the contractor, the court submitted the issues whether the building had been completed in accordance with the contract, and, if not, the amount required to do so, the jury being charged that they were the exclusive judges of the credibility of the witnesses and the weight to be given to their testimony, a further instruction that if the contractor failed to construct the house exactly in accordance with the contract, but the same could be made to conform thereto, then defendant would only be entitled to withhold from the price an amount sufficient to remedy the defects was not objectionable as on the weight of the evidence, and implying that the building could be made to comply with the contract for a less sum than the amount withheld.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436, 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

4. CONTRACTS (§ 285*)—BUILDING CONTRACT—CONSTRUCTION — ARCHITECTS — ARBITRATORS.

A provision in a building contract authorizing the owner to retain 20 per cent. of the contract price, to be paid on satisfactory completion and acceptance of the entire work after the expiration of 15 days from final completion, and that such 20 per cent. should be held by the owner as a security for the faithful completion of the work, and might be applied, under the direction of the architect, in liquidation of any damages under the contract, implied only that, in case the owner had to complete the building, the completion should be under the direction of the architect and the damages determined by the amount required to so complete it, and did not make the architect the arbiter of the amount of damages for the contractor's failure to complete the building according to the contract, or authorize the architect to direct the application of the balance held by the owner to the satisfaction of such damages.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1290, 1291, 1303, 1304; Dec. Dig. § 285.*]

5. CONTRACTS (§ 319*)—BUILDING CONTRACTS—TERMINATION—TAKING OVER WORK.

Where the owner of a building under construction elected to take charge of the work on the contractor's failure to complete the building according to plans and specifications, as authorized under the contract, such election terminated the contract, and, if the amount required to complete the building was less than the amount withheld to secure performance by the contractor, the owner was indebted to him for the difference.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1458, 1476, 1477, 1479, 1493–1507; Dec. Dig. § 319.*]

6. APPEAL AND ERROR (§ 1064*)—REVIEW—INSTRUCTIONS—PREJUDICE.

Where a lumber company authorized G. to contract in his own name for the construction of a house for defendant, the lumber company acting as an undisclosed principal, but there was no evidence that it ever asserted or would likely assert any claim to a balance of the contract price for which the owner had been garnisheed at the instance of a labor and material claimant, any error in an instruction that, notwithstanding G.'s undisclosed agency, any balance owing by defendant would be considered a debt due G. and subject to plaintiffs' garnishment, if G. was held out to plaintiffs by defendant as the real contractor, and if plaintiffs were thereby induced to extend credit to him, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

7. CONTRACTS (§ 285*)—BUILDING CONTRACT—ABANDONMENT — AUTHORITY OF ARCHITECT.

A provision of a building contract for the withholding of 20 per cent. of the price until 15 days after completion, declaring that such sum should be held by the owner as security for the faithful completion of the work, and might be applied under the direction of the architect in liquidating any damages sustained by the owner, did not constitute an agreement that any estimates by the architect of the damages sustained by the owner because of the contractor's breach should be binding on the parties.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1290, 1291, 1303, 1304; Dec. Dig. § 285.*]

8. CONTRACTS (§ 284*)—BUILDING CONTRACT—FAILURE TO PERFORM—BALANCE OF PRICE.

Where the owner of a building under construction took over the work as authorized to do under the contract, by which he was also entitled to retain a part of the price to secure performance, an instruction that he was not liable for any balance, unless the building was completed to the satisfaction of the architects and accepted by them, was properly refused, since the contractor's breach could not deprive him of the right to such balance of the price as might remain after the owner had completed the building according to the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1292–1302, 1308–1310, 1312–1316, 1326–1338, 1340–1342, 1344–1346, 1350, 1351; Dec. Dig. § 284.*]

9. APPEAL AND ERROR (§ 1067*)—REVIEW—INSTRUCTIONS—PREJUDICE.

Where the court charged that an owner of a building, by taking possession and moving into it, could not be held to have accepted the building as finished in accordance with the construction contract, and would still be entitled to claim damages for the contractor's breach, if any, he was not prejudiced by the court's refusal of a requested charge that no payments by the owner as the work progressed could be construed as an acceptance of any defective work done on the building.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4229; Dec. Dig. § 1067.*]

10. TRIAL (§ 129*)—ARGUMENT OF COUNSEL.

Where, in an action by a materialman to recover a balance due on a building contract from the owner, counsel argued that the jury should find for the owner because there was a clause in the contractor's bond protecting plaintiffs and giving them a right to collect their claim from the contractor and his bondsman, argument in reply that plaintiffs knew nothing of the bond until the trial of the suit, and that the owner ought not to be permitted to secrete the bond until the trial and then defame plaintiffs because they did not sue on it, was not erroneous.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 310; Dec. Dig. § 129.*]

11. TRIAL (§ 129*)—ARGUMENT OF COUNSEL.

Where, in an action to recover a balance due on a building contract, defendant's counsel

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

in argument read a clause from the contract providing that all controversies as to the meaning of specifications should be referred to the architect for settlement, and contended that, if the contractor was in doubt as to any of the specifications, he should have referred the same to the architect for instructions, argument in reply that it was the duty of the owner or the architect to constantly supervise the work to discover deviations from the plans and specifications and to call the contractor's attention to the same, and because that was not done plaintiffs could not recover, was not objectionable.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 310; Dec. Dig. § 129.*]

Appeal from Wise County Court; E. M. Allison, Judge.

Suit by J. T. House and others against P. C. Funk, garnishee. Judgment for plaintiffs, and defendant appeals. Affirmed.

R. E. Carswell, of Decatur, for appellant. McMurray & Gettys, of Decatur, and H. E. Lobdell, of Bridgeport, for appellees.

DUNKLIN, J. A written contract was entered into by J. W. Gregg, contractor, and Dr. P. C. Funk, owner, by the terms of which the contractor agreed to build a house for the owner for a consideration of $3,379.65, and to furnish the labor and material therefor. The contract provided that the work was to be done under the supervision and to the satisfaction of the architects, Waller & Fields, or their superintendent, who prepared the plans and specifications for the building. It was further stipulated in the contract that 80 per cent. of the contract price should be payable for labor and material used in the building upon certificates of the superintendent, itemized statements to be furnished by the contractor to the superintendent as a basis for such certificates, and the remaining 20 per cent. of the contract price was payable 15 days after the completion and acceptance of the entire work.

The owner paid 80 per cent. of the contract price under the stipulations above mentioned. House & Son furnished to Gregg, the contractor, labor and material which were employed in the construction of the building and for which Gregg paid nothing. In a suit instituted by them, they recovered a judgment against Gregg for such labor and material in the sum of $209.38 and costs of suit aggregating $5.

The present suit was a garnishment proceeding instituted by House & Son against Funk, as garnishee, to subject any balance due by the garnishee to Gregg, under the contract, to the payment of that judgment, and, from a judgment in favor of the plaintiffs against the garnishee for $214.68, the garnishee has appealed.

In his answer, after denying any indebtedness to Gregg, the garnishee alleged specially the contract between himself and Gregg for the construction of the house, the payment by the garnishee of 80 per cent. of the contract price, further alleging that Gregg had failed to complete the house in accordance with the terms of the contract and had abandoned the same; that the garnishee had been forced to the necessity of taking charge of the work for the purpose of completing the same according to the terms of the contract, and had done so; that, according to the terms of the contract, the garnishee had a right to retain 20 per cent. of the contract price as security for the faithful completion of the house and to be applied under the direction of the architect; that the garnishee had been damaged in a sum in excess of the balance of the contract price, which had been estimated by the architect as the amount due the garnishee for such breach of the contract by Gregg. He further alleged that Gregg had no interest in the building contract; that, in executing the same, he had done so merely as the agent of the J. J. B. McCullar Lumber Company; and that, if the garnishee owed any sum under the contract, the same was due to such company and not to Gregg.

The answer of the garnishee was controverted by plaintiffs, who alleged that they had good reason to believe, and did believe, that Funk was indebted to Gregg in the sum of at least $700 for labor and material furnished and done in the construction of the building, about $309 of which was furnished by the plaintiffs to Gregg with full knowledge and notice to Funk at the time.

Gregg also filed a controverting affidavit in which he claimed Funk was indebted to him under the contract in a sum in excess of $700; that he (Gregg) had completed the contract according to its terms; that he did not abandon the building before the work was completed; and that, if any certificate had been given by the architect that the building was not completed according to the contract and the full contract price not earned, the same was given as the result of a fraudulent conspiracy between the architect and Funk for the purpose of defeating the collection of such balance of the contract price.

The garnishee addressed a special exception to the allegation in plaintiffs' petition that they had furnished to Gregg $309 worth of work and material, which were used in the erection of the building, with full knowledge of the garnishee; the ground of exception being that by such allegations plaintiffs were attempting to set up an original cause of action in themselves against the garnishee. The court overruled this special exception, and also overruled the garnishee's objection upon the same ground to the testimony of the plaintiff J. T. House that he did furnish Gregg material and labor for completing the house, amounting to $309, with garnishee's knowledge, and that such work and material so furnished were satisfactory to the garnishee and accepted by him.

Those rulings are made the bases of appellant's first and second assignments of error. The pleading to which the exception was addressed was a reply to the issue tendered by the garnishee that Gregg had no interest in the contract, but that, in making the same, he acted merely as the agent of the McCullar Lumber Company, in whom alone the right to recover any balance due on the contract was vested.

[1] It appears that testimony substantially to the same effect as that of the plaintiff referred to already was given by the garnishee himself, without objection.

[2] We are of the opinion further that, if there was any error in the rulings now under discussion, the same were rendered harmless, in view of the special instruction, given to the jury at garnishee's request, that the fact that plaintiffs did work on garnishee's dwelling, which was satisfactory to him and received and enjoyed by him, would not authorize a verdict against him for the value of the work, and that, before a verdict could be rendered in plaintiffs' favor, the jury must find from a preponderance of the evidence that the defendant owed Gregg a balance under the contract, and in view of the further instruction given in the court's main charge substantially to the same effect.

[3] Error has been assigned to an instruction given by the court to the jury that if Gregg failed to construct the house exactly in accordance with the terms of the contract, but that the same could be made to conform to such contract, then Funk "would only be entitled to withhold out of the contract price whatever amount would be sufficient to remedy all defects in construction and material and make the building conform substantially to the terms and stipulations of the contract." Appellant insists that the instruction was upon the weight of the evidence in that it was calculated to impress the jury with the idea that the court was of the opinion that the building could be made to comply with the contract for a sum less than has been withheld out of the contract price of the building. In other instructions contained in the court's charge, the issues whether or not the building had been completed in accordance with the terms of the contract and the amount required so to do if it had not been so finished were plainly submitted to be determined by the jury, who were further told that they were the exclusive judges of the credibility of the witnesses and of the weight to be given to the testimony. In view of such instructions, we are of the opinion that, if the instruction criticised could be held subject to the interpretation suggested, it is not probable that it resulted in any harm to appellant.

[4] The contract with Gregg provided that the balance of 20 per cent. of the contract price should be paid "on satisfactory completion and acceptance of the entire work after the expiration of 15 days," and that such balance of 20 per cent. "shall be held by owner as security for the faithful completion of the work and may be applied under the direction of the architect in the liquidation of any damages under this contract." Another criticism presented to the instruction above noted is that the same ignored those two stipulations in the contract. Appellant apparently construes the stipulation last quoted as an agreement on the part of the contractor and owner that the architect should be the arbiter to determine the amount of damages to the owner for a failure of the contractor to complete the building according to the terms of the contract and as authorizing the architect to direct the application of such balance withheld by the owner to the satisfaction of such damages. We are of the opinion that the stipulation cannot properly be so construed. Read in the light of the language "shall be held by the owner as security for the faithful completion of the work," the language "may be applied under the directions of the architect in the liquidation of any damages under this contract" means no more than that, in the event the necessity should arise for the owner to complete the building himself, the completion of the same should be under the direction of the architect, and the damages determined by the amount required to so complete it.

[5] Furthermore, the contract contained another stipulation reading as follows:

"It is also agreed that if the contractor shall at any time refuse or neglect to furnish the proper material or workman or otherwise fail or refuse to comply with the plans and specifications, such failure being certified to by the architect, the owner shall be at liberty (after three days' written notice to the contractor) to provide the proper material and workman and deduct the cost from the money then due, or to become due, the contractor, or for sufficient reasons to terminate the employment of the contractor and take charge of the premises and all material thereon, and complete the building according to plans and specifications, charging the expense to the contractor."

And it was expressly pleaded by the garnishee that it had become necessary for him to take charge of the work for the purpose of completing the house according to the terms of the contract, and that he had done so. This clearly shows that the garnishee elected to avail himself of the remedy given by the stipulation last quoted. It also appears from the evidence that the appellant did take charge of the house for the purpose of completing the same under the direction of the architect, who further directed him to apply the balance withheld from the contract price to payment for labor and material necessary to so complete the work and pay over any excess remaining of such balance to the contractor. When appellant elected to take charge of the house upon Gregg's breach of the contract, the contract was thereupon terminated. If the amount necessary to complete the house was less than the amount withheld by appellant, then appellant owed Gregg the difference.

[6] Gregg testified that in making the con-

tract he acted as agent for the McCullar Lumber Company, for whom he was working at a salary of $60 per month, and that he had no personal interest in the contract. He further testified that he never told Funk of such agency until after Funk had called on him to complete the house. No testimony was introduced tending to show that Funk had any knowledge of such agency prior to this information given him by Gregg, and appellant insists that, in the absence of such evidence, the court erred in instructing the jury substantially that, notwithstanding Gregg's undisclosed agency, any balance owing by Funk under the contract would be considered as a debt due Gregg and subject to plaintiffs' writ of garnishment, if Gregg was held out to plaintiffs by Funk as the real contractor, and if plaintiffs were thereby induced to extend credit to him for labor and material furnished in the construction of the house. Having authorized Gregg to make the contract in his own name, and thus to hold himself out as a principal, any judgment rendered against Gregg would clearly be binding on the McCullar Lumber Company, Gregg's principal. Furthermore, no evidence was introduced tending to show that the McCullar Lumber Company was asserting, or would likely assert, any claim to the balance of the contract price. Accordingly the error, if any, in the court's instruction on the issue of estoppel was harmless. For the same reason there was no error in refusing appellant's requested instruction that, if Gregg, in making the contract, did so as the agent of the McCullar Lumber Company, a verdict should be rendered in favor of the appellant. See O'Brien v. Mayer, 143 S. W. 240.

[7] Error has been assigned to the refusal of two requested instructions, one of which was in effect that the estimates given by the architect were presumed to be correct, and that, in determining whether or not Funk was indebted to Gregg, such estimates should be considered as true and correct, unless plaintiffs had shown them to be erroneous by a preponderance of the evidence, and that the architect giving such estimates had acted fraudulently in making the same, and that Funk knew of such fraud. The other requested instruction was that such estimates of the architect were presumed to be correct until plaintiff showed them to be incorrect by a preponderance of the evidence; said instruction omitting the issue of fraud in the architect in giving such estimates. Appellant invokes the following stipulation in the contract, which has been quoted already, as warranting the instructions requested, namely:

"It is agreed by the parties that 20 per cent. of the contract price should be held by the owner as security for the faithful completion of the work and may be applied under the direction of the architect in liquidation of any damages under this contract."

In support of this contention appellant cites Kilgore v. Baptist Educational Society, 89 Tex. 468, 35 S. W. 145. The contract involved in that case was a building contract, in which the owner and the contractor had expressly agreed that the owner should pay the contractor as the work on the building progressed according to the estimates of the architect, whose estimates were by the terms of the contract made binding upon the owner. The court held that the jury should have been instructed that the estimates given were presumed to be correct, in the absence of any showing that the architect, in giving them, acted fraudulently. We are of the opinion that the stipulation now under discussion cannot properly be construed as an agreement that any estimates by the architect of the amount of damages sustained by the plaintiff by reason of Gregg's breach of his contract should be binding upon the parties, and hence the decision cited is not applicable.

[8] There was no error in refusing another requested instruction in effect that a verdict should be returned in favor of the garnishee unless the building was completed to the satisfaction of the architects and accepted by them. While Gregg contracted so to do, he could not be deprived of the right to recover such balance of the contract price as might remain after Funk should complete the building as he had undertaken to do.

[9] There was no reversible error in refusing appellant's requested instruction that no payments made by Funk for work done on the building could be construed as an acceptance by him of any defective work done on the building. At appellant's request the jury were told that the fact that the defendant took possession of the dwelling and moved into it could not be construed as an acceptance of the building as finished in accordance with the contract, and that he would still have a right to claim damages for the breach of the contract by Gregg, if any. Furthermore, the contract containing a stipulation substantially to the same purport as the requested instruction was read in evidence to the jury.

[10] Counsel for plaintiffs in his closing address to the jury stated substantially that plaintiffs knew nothing of the bond given by Gregg to Funk for the completion of the building until the trial of this suit; that Funk could recover on the bond; and that he ought not be permitted to put the same in his pocket until the trial, and then defame plaintiffs because they did not sue on the bond. Error has been assigned to this argument, and also to the refusal of the court to give appellant's requested instruction to the jury to disregard it. In approving the bill of exception, the court states that the argument so made by plaintiffs' counsel was in reply to an argument by appellant's counsel that the jury should find for Funk because there was a clause in the contractor's bond protecting plaintiffs and giving them the right to sue

and collect their claim from Gregg and his bondsmen. In view of this. explanation by the trial judge, the assignments of error based upon the argument are overruled.

[11] Assignments are also presented to the further argument by counsel for appellee and to the refusal of a requested instruction to the jury to disregard the same. According to that argument, it was the duty of Funk or the architects to constantly supervise the work as it proceeded for the purpose of discovering any deviation from the plans and specifications and to' call Gregg's attention to the same, and, because the same was not done, plaintiffs should recover in this cause. In explanation of the failure to exclude the argument upon appellant's exception thereto and to give the requested instruction, the trial judge stated in the bill of exception that counsel for appellant, in his argument to the jury, read parts of the contract, and especially that clause stipulating that all controversies relative to the meaning of the specifications should be referred to the architect for settlement, and contended that, if Gregg was in doubt as to any specifications, he should have referred the same to the architect for instructions. Appellant's counsel having thus invited a discussion of stipulations wholly foreign to any issue to be determined by the jury, and the argument of appellees' counsel being based substantially upon the same stipulations, and as the instruction given by the court to the jury negatived the materiality of the stipulations so discussed to the rights of either party to the controversy in this suit, the assignments now under discussion are overruled.

We are of the opinion further that the judgment is supported by the testimony, and, as we have found no error in the record, it is affirmed.